IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THERESA JONES,                                :
    Plaintiff,                            :
                                          :
    v.                                    :       CIVIL ACTION NO. 25-CV-6244
                                          :
PHILADELPHIA HOUSING                          :
AUTHORITY, *et al.*,                          :
    Defendants.                           :

## MEMORANDUM

COSTELLO, J.                                                        APRIL  23, 2026

*Pro se*  Plaintiff Theresa Jones brings this civil action, naming as Defendants the City of Philadelphia ("the City") and the Philadelphia Housing Authority ("PHA").  In a prior Order, the Court granted Jones leave to proceed *in forma pauperis*.  (ECF No. 7.)  After the Defendants moved to dismiss Jones's original Complaint, she filed an Amended Complaint.  (*See* ECF No. 52.)  Currently before the Court are Defendants' Motions to Dismiss the Amended Complaint. (ECF Nos. 57, 58.)  For the following reasons, the Court will grant the Defendants' Motions and dismiss the Amended Complaint.

## I.    FACTUAL ALLEGATIONS[1]

Jones states that she "resides in a dwelling unit owned and occupied by a close family member."  (Am. Compl. at 3.)  She "has no formal written lease but contributes to utilities and

---

[1]  The facts set forth in this Memorandum are taken from Jones's Amended Complaint (ECF No. 52).  In evaluating the Defendants' Motions to Dismiss, the Court considers "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record," as well as any "document integral to or explicitly relied upon in the complaint."  *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citations omitted).  The Court adopts the pagination assigned to all filings by the CM/ECF docketing system.  Grammar, spelling, and punctuation are cleaned up where necessary.

household expenses to the extent possible," and "the relative owner has been waiving shelter expenses, such as rent, due to [Jones]'s limited fixed income." (*Id.*)  She applied to PHA for and received a Housing Choice Voucher (hereinafter "HCV" or "the voucher").[2] (*Id.*)  Jones then submitted her Request for Tenancy Approval ("RFTA") and sought a "reasonable accommodation to remain in her current family unit with family supports," based on her purported "disability-related needs." (*Id.*)

Defendant PHA denied Jones's RFTA, "stating that the unit lacked a rental license, based on guidance and directive issued by the City through its Department of Licenses and Inspections ('L&I')." (*Id.* at 4.)  Jones disputed PHA's interpretation of the relevant provisions of the Philadelphia Code and asserted that, because the family member who owns the unit also occupies it with her, a rental license is not required for her to apply her voucher to the unit and have her tenancy approved. (*Id.*)

Jones pleads that, "[s]eparately and independently, PHA enforces a policy prohibiting voucher use in a relative-owned unit where the owner resides, even though HUD [(Department of Housing and Urban Development)] regulations permit shared housing and require exceptions as reasonable accommodations for persons with disabilities." (*Id.*)  She asserts that her "physician later clarified and updated the verification [of her request for reasonable accommodation], expressly removing any request for accessibility features and verifying [Jones]'s disability-related need for accommodation to 'stay in her same apartment' with family supports." (*Id.* at 4-5 (citing ECF No. 2 at 15-16).)  Jones alleges that "PHA failed to engage in

---

[2]  Defendant PHA attached Jones's initial application for the HCV to its Motion to Dismiss, arguing that Jones's Amended Complaint relies upon the application and thus it is appropriate for the Court to consider in evaluating whether Jones states a claim to relief. (*See* ECF No. 57-1 at 15 & n.5; No. 57-2 at 1-9.)

an interactive process and instead froze the accommodation request at its earliest iteration." (*Id.* at 5.)  She asserts that PHA has "denied the requested accommodation and the ability to use her voucher." (*Id.*)

Jones brings claims under the Fair Housing Act ("FHA"), the Rehabilitation Act ("RA"), and Americans with Disabilities Act ("ADA") based on a failure to accommodate her disability and interference with her ability to participate in the HCV program. (*See id.* at 5-8.)  She asserts a Fourteenth Amendment due process claim based on her purported "protected property interest in the [HCV] and the fair consideration of her request for reasonable accommodation." (*Id.* at 8.)  She also claims that the City, through L&I, "exceeded its statutory authority" and acted "*ultra vires*" in construing the Philadelphia Code's rental licensing requirement. (*Id.* at 8-9.)  She seeks a declaratory judgment that the Defendants' conduct violates her rights and injunctive relief to require PHA to, among other things, "approve Plaintiff's [RFTA] and permit use of her [HCV] in the subject family-owned, owner-occupied dwelling." (*Id.* at 9.)

## II.    PROCEDURAL HISTORY

Jones submitted her original Complaint to the Court on October 31, 2025, along with her Motion to Proceed *In Forma Pauperis*, Emergency Motion for Preliminary Injunction, and Motion to Appoint Counsel. (*See* ECF Nos. 1-4.)  The Court then granted Jones leave to proceed *in forma pauperis*, explaining that the Complaint remained subject to screening pursuant to 28 U.S.C. § 1915, and denied her motions for appointment of counsel and preliminary injunctive relief. (*See* ECF No. 7.)   Jones renewed her request for preliminary injunctive relief and moved for service of her Complaint and other papers on the Defendants via the U.S. Marshals Service.

3

(*See* ECF Nos. 8, 9.)  After the Marshal served the relevant documents on the City and PHA,[3] the Defendants moved to dismiss the Complaint and opposed the renewed motion for a preliminary injunction.  (*See* ECF Nos. 31, 32, 34-36.)  After the Court denied Jones's renewed motion for a preliminary injunction, (*see* ECF No. 47), Jones sought leave to file her proposed Amended Complaint, which the Court granted, (*see* ECF Nos. 50, 52, 53).  The Defendants filed their Motions to Dismiss the Amended Complaint, which are now fully briefed.  (*See* ECF Nos. 57-59, 63, 65, 66.)  Jones then filed another Motion for Preliminary Injunction, to which the Defendants responded, and an Emergency Motion for Temporary Restraining Order.  (*See* ECF Nos. 54, 60-62, 64, 67.)  The Court denied those Motions in an Order entered on April 16, 2026. (*See* ECF No. 68.)

## III.    STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).  In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.)  "Although the plausibility standard does not impose a

---

[3]  Jones also moved for a temporary restraining order but later withdrew that motion.  (*See generally* ECF Nos. 16, 23, 33.)  The Court also terminated L&I as a Defendant because it is not a separate entity amenable to suit.  (*See* ECF No. 33 at 2 & n.2.)

probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (noting that *pro se* filings are construed liberally). Additionally, since Jones is proceeding *in forma pauperis*, the Court may independently screen her Amended Complaint and dismiss it "at any time" pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) if, among other things, it fails to state a claim. *Brown v. Sage*, 941 F.3d 655, 662 (3d Cir. 2019) (*en banc*) ("To repeat, the statute requires a court to dismiss an IFP complaint 'at any time' if it determines that the complaint is frivolous, malicious, or fails to state a claim."). The standard under this screening provision is the same standard that governs a dismissal under Rule 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

The Court must also review the pleadings and dismiss the matter if it determines that the action fails to set forth a proper basis for this Court's subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d

116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).

## IV.    DISCUSSION

### A.    Administration of the Tenant-Based Assistance Program

Federal law authorizes HUD to "provide assistance to public housing agencies for tenant-based assistance."  42 U.S.C. § 1437f (o).  HUD has accordingly established the HCV program, under which it "pays rental subsidies" that are administered by local government entities such as PHA.[4]  24 C.F.R. § 982.1(a)(1).  "To receive tenant-based assistance, the family selects a suitable unit.  After approving the tenancy, the PHA enters into a contract to make rental subsidy payments to the owner to subsidize occupancy by the family."  § 982.1(b)(2).  For the purposes of eligibility to participate in the HCV program, a "family" may be a single person, including a disabled person.  *See* § 982.4 (citing §§ 5.403, 982.201).

Once a family is granted the voucher, the family must seek PHA's approval for a specific unit through an RFTA.  *See generally* §§ 982.301-305.  "The PHA must not approve a unit if the owner is the parent, child, grandparent, grandchild, sister, or brother of any member of the family, unless the PHA determines that approving the unit would provide reasonable accommodation for a family member who is a person with disabilities."  § 982.306(d).  In other

---

[4] The relevant sections of the Code of Federal Regulations refer to all "public housing agencies" as "PHAs."  *See* 24 C.F.R. § 982.1(a)(1).  However, because the Philadelphia Housing Authority is also a "public housing agency" as defined by the statute, the Court's use of the initialism "PHA" as a signifier embraces both meanings.

words, when the owner of a unit is related to the family seeking to use their voucher, the unit may only be approved as a reasonable accommodation for a disability.  However, while a reasonable accommodation may be granted to use the voucher for a unit that is owned by a relative, "[a] unit occupied by its owner or by a person with any interest in the unit" is ineligible for approval, and "may not be assisted by a PHA in the tenant-based programs." § 982.352(a)(6).

Even where a unit has been approved, the assisted family participating in the HCV program has ongoing obligations: "The composition of the assisted family residing in the unit must be approved by the PHA. . . .  No other person [besides] members of the assisted family [] may reside in the unit []except for a foster child or live-in aide . . . ." § 982.551(h)(2).  A live-in aide may be approved "to reside in the unit and provide necessary supportive services for a family member who is a person with disabilities." § 982.316(a).  The live-in aide may be approved as part of a "shared housing" unit as a "special housing type." § 982.615(b)(1).  The voucher may also be used for other shared housing arrangements, particularly if the shared housing is approved as a reasonable accommodation for a disability.  *See* § 982.601(a)(4), (b)(3). The other residents of the shared housing unit may themselves be receiving HUD assistance or not.  *See* § 982.615(b)(2).  Shared housing is an exception to the general prohibition on owner-occupants because "[t]he owner of a shared housing unit may reside in the unit." § 982.615(b)(3).  However, the provision allowing owner-occupied shared housing is subject to two caveats: "housing assistance may not be paid on behalf of an owner," and an "*assisted person may not be related by blood or marriage to a resident owner*."  *Id.* (emphasis added).

As explained in its Motion to Dismiss, PHA is required by HUD to adopt an Administrative Plan for the HCV program.[5]  (*See* ECF No. 57-1 at 11-12 & n.1 (citing, *inter alia*, 24 C.F.R. § 982.54(a)-(c)).)  The Administrative Plan states that it is governed by the regulations in 24 C.F.R. Part 982.  *See* Admin. Plan § 1.5.  PHA argues that Jones's request to use her voucher to subsidize her tenancy in a unit owned and co-occupied by her family member is prohibited by the regulatory scheme contained in Part 982 described above and the provisions of the Administrative Plan that give effect to those regulations.  (*See* ECF No. 57-1 at 11-13.)  PHA explains that it has the discretion to approve the use of a voucher to rent a unit from the voucher holder's family member as a reasonable accommodation for a disability.  (*See id.* at 13 (citing 24 C.F.R. § 982.306(d); Admin. Plan §§ 13.4, 14.6).)  "But even where PHA approves a reasonable accommodation for a disabled individual to use their voucher to rent from a family member, the family member-owner ***cannot*** reside in the unit with the individual."  (*Id.* (citing 24 C.F.R. §§ 982.352(a)(6), 982.551(h)(2), 982.615(b)(3); and Admin. Plan § 13.7).)  According to PHA, "[e]ssentially, HUD regulations allow a disabled individual with a reasonable accommodation to use their voucher to rent from a family member, so long as the individual and their family member-owner are not occupying the unit together."  (*Id.*)  As Jones herself pleads, PHA denied her RFTA to use her voucher in the unit owned and co-occupied by her family member based on the prohibition contained in the federal regulations, "[s]eparately and independently" from any other basis for the denial.  (Am. Compl. at 4; *see also* ECF No. 57-1 at 16, 22.)

---

[5]  PHA's Administrative Plan may be accessed at https://www.pha.phila.gov/wp-content/uploads/2025/07/Admin-Plan-Effective-07-01-2025.pdf (last accessed Apr. 20, 2026, hereinafter "Admin. Plan").  As PHA correctly notes, the Court may take judicial notice of this information, as it is publicly available on a government website.  (*See* ECF No. 57-1 at 12 n.1 (citing *Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017)).)

### B.      Application: Fair Housing Act Claims

Jones claims that PHA violated the Fair Housing Act because its enforcement of the prohibition described above constituted a failure to provide her with a reasonable accommodation for her disability and interfered with the exercise of her rights under the FHA. (*See* Am. Compl. at 5-7 (citing 42 U.S.C. §§ 3604(f)(3)(B), 3617).)

#### 1.      Reasonable Accommodation for Disability

The FHA prohibits discrimination on the basis of race, color, religion, sex, familial status, or national origin, in a variety of real estate-related transactions.  *See* 42 U.S.C. § 3604. Congress later passed the Fair Housing Amendments Act ("FHAA") "to protect against discrimination on the basis of disability."  *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 104 (3d Cir. 2017) (first citing *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 728 n.1 (1995); then citing Fair Housing Amendments Act of 1988, Pub. L. No. 100-430, 102 Stat. 1619 (1988)).  The FHAA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person."  42 U.S.C. § 3604(f)(2)(A).  Discrimination under the FHAA includes, *inter alia*, "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B).

"Under the FHAA, handicap means a physical or mental impairment which substantially limits one or more of a person's major life activities."  *431 E. Palisade Ave. Real Estate, LLC v. City of Englewood*, 977 F.3d 277, 284 (3d Cir. 2020) (quoting 42 U.S.C. § 3602(h)(1)) (cleaned up).  "To determine whether an accommodation is 'reasonable,' we consider whether the

9

requested accommodation is (1) reasonable and (2) necessary to (3) afford handicapped persons an equal opportunity to use and enjoy housing." *Revock*, 853 F.3d at 110 (quoting *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of the Twp. of Scotch Plains*, 284 F.3d 442, 457 (3d Cir. 2002)). "'Necessary' suggests something that cannot be done without, and thus is treated as requiring a causal link that examines whether the accommodation sought will redress injuries that otherwise would have prevented disabled individuals from the same enjoyment or access to the property as non-disabled persons." *Schueller v. Pennypack Woods Home Ownership Assoc.*, No. 19-178, 2021 WL 7285246, at *4 (E.D. Pa. Dec. 22, 2021) (internal quotations and citations omitted). "Whether there has been a 'refusal' to provide a reasonable accommodation under the Fair Housing Act depends on the circumstances." *Revock*, 853 F.3d at 110.

Jones alleges that "PHA failed to engage in an interactive process" regarding her requests for accommodation, "and instead froze the accommodation request at its earliest iteration." (Am. Compl. at 5.) Jones's initial application for participation in the HCV program stated: "accommodations needed include accommodations to assist with mobility, accessible bath with grab bars, extra room/space to store medical equipment." (ECF No. 57-2 at 3.) The Court understands Jones's allegation that PHA "froze the accommodation request at its earliest iteration" as referring to PHA's decision to grant her initial request for a wheelchair-accessible unit, based on her HCV application and initial submission from her physician, Dr. Edward Castillo, (*see* ECF No. 57-1 at 16 & n.6), but then to deny her subsequent request "to remain in her current family unit with family supports, as verified by her treating physician," (Am. Compl. at 3 (citing ECF No. 2 at 15-16); *see also* ECF No. 59 at 2 ("Plaintiff sought approval to use her voucher in a family-owned, owner-occupied dwelling where she could remain with family supports directly related to her disability-related needs.")). The "Verification of Need for

10

Reasonable Accommodation" that Dr. Castillo submitted on behalf of Jones answered "No" to the question: "If the applicant is disabled, does []she have a physical disability that results in the need for any accessible housing features or accommodations?" (ECF No. 2 at 15.) Dr. Castillo went on to state that: "Patient [*i.e.*, Jones] should stay in her same apartment. Her health situation seems to be declining based on recent testing. She is using a walker, gets support from her son[,] and she cares for her grandchildren. The apartment facilitates her wellbeing per the patient." (*Id.* at 16; *see also* Am. Compl. at 3; ECF No. 57-1 at 16-17).)

PHA argues that Jones "only makes conclusory allegations" regarding her disability, and therefore "cannot show that her requested accommodation is related to her disability or necessary to prevent her from suffering unequal treatment on the basis of her disability." (ECF No. 57-1 at 20-21 (internal quotation marks, citations, and alterations omitted).) In response, Jones argues that her Amended Complaint "alleges that [she] is a person with a disability, that her disability affects her housing needs, that her treating physician verified her need for accommodation, and that PHA denied the request. That is all federal law requires at the pleading stage. Courts do not require plaintiffs to plead medical diagnoses, clinical detail, or evidentiary proof of necessity in FHA, ADA, or [RA] cases. PHA's insistence on heightened medical specificity improperly conflates pleading standards with proof." (ECF No. 59 at 4 (first citing Am. Compl. at 2-3; then citing *Spieth v. Bucks Cnty. Hous. Auth.*, 594 F. Supp. 2d 584, 589-90 (E.D. Pa. 2009); and then citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999)).) In turn, PHA responds that the cases Jones cites do not support the proposition she asserts: "[T]he court in *Spieth* actually granted the defendant's motion to dismiss because it found that the plaintiff failed to state claims under the FHA, ADA, and RA. *Taylor* was a summary judgment case that did not

11

discuss the requisite level of detail a plaintiff must plead about their disability." (ECF No. 65 at 2 (first citing *Spieth*, 594 F. Supp. 2d at 594; then citing *Taylor*, 184 F.3d at 305-11).)

As described above, in evaluating a failure-to-accommodate claim under the FHAA, the Court must "consider whether the requested accommodation is (1) reasonable and (2) necessary to (3) afford handicapped persons an equal opportunity to use and enjoy housing." *Revock*, 853 F.3d at 110 (citation omitted). "'[N]ecessary' means 'required.' It is a high standard[, so the Court] must consider what is necessary to satisfy the particular disabled person's need." *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018). "Necessities do not include conveniences and creature comforts, much as they are desirable or even helpful. . . . In short, the [FHAA]'s necessity element requires that an accommodation be essential, not just preferable." *Id.* at 106. "To survive a motion to dismiss, a plaintiff need only plausibly plead enough facts to make out the three elements set forth in § 3604(f)(3)(B): refusal, reasonable accommodation, and necessity/equal opportunity." *Id.* at 111. As PHA argues, because Jones has not pleaded any specific facts about the nature of her disability, let alone any facts to plausibly allege that her request to share a unit owned and occupied by her relative is necessary to accommodate that disability, she has failed to state a claim to relief. Despite Jones's contention to the contrary, "[a] plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021); *see also Iqbal*, 556 U.S. at 680 (stating that a complaint must include sufficient facts to nudge claims "across the line from conceivable to plausible" (citing *Twombly*, 550 U.S. at 545)).

Moreover, the deficiency in Jones's pleading appears also to reveal underlying defects with her request to PHA. Her physician's verification of her request for accommodation states that she "should stay" in the unit owned by and shared with her family member because it

12

"facilitates her wellbeing" according to Jones herself.  (ECF No. 2 at 16.)  Jones has not alleged that she ever presented a more specific description of her disability or the necessity of her requested accommodation to PHA.  Jones also argues that PHA should have provided her with her requested accommodation because "HUD regulations expressly require PHAs to make exceptions to program rules when necessary to afford individuals with disabilities equal access, including: 24 C.F.R. § 982.601(b)(3) (shared housing as a reasonable accommodation); [and] 24 C.F.R. § 982.615(a) (approval of live-in aides and arrangements necessary to ensure accessibility)."  (ECF No. 59 at 5.)  As PHA notes, Jones's RFTA—as well as publicly available property records—demonstrate that the unit she seeks approval for is a single-family unit.  (ECF No. 57-1 at 24 & n.11 (citing, *inter alia*, ECF No. 2 at 17).)  In her RFTA under "Unit Type," Jones selected "Row Home (Inner Row)" and "Single Family Unit," but did not select "Shared Housing."  (ECF No. 2 at 17.)  The verification form completed by her physician did not indicate that Jones needed a live-in aide or that the separate verification form for a live-in aide was submitted.  (*See id.* at 16; *see also* ECF No. 57-1 at 24.)  In other words, it is not clear from Jones's pleading that she ever made the specific request to PHA for the use of shared housing or a live-in aide that she now asserts as support for her preferred accommodation.  Even if she had, PHA correctly notes that, under the HUD regulations, even when shared housing or a live-in aide is offered as an accommodation for a disability, "[a]n assisted person may not be related by blood or marriage to a resident owner." (ECF No. 57-1 at 24 (quoting 24 C.F.R. § 982.615(b)(3)).)

In sum, Jones's Amended Complaint does not include plausible factual allegations to support a claim that PHA's denial of her RFTA constituted a failure to provide a reasonable accommodation for her disability in violation of the FHAA.

### 2.    Interference with FHA Rights

The FHAA also makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by section . . . 3604 . . . of this title."  42 U.S.C. § 3617.  "A Section 3617 interference claim requires proof of three elements: (1) that the plaintiff exercised or enjoyed any right granted or protected by [the FHA]; (2) that the defendant's conduct constituted interference; and (3) a causal connection existed between the exercise or enjoyment of the right and the defendant's conduct."  *Revock*, 853 F.3d at 112-13 (internal quotations and footnote omitted).  The regulations associated with § 3617 make clear that the section is intended to prohibit acts directed at individuals "because of" their membership in a protected class.  24 C.F.R. § 100.400(c)(2) (listing prohibited conduct to include "[t]hreatening, intimidating or interfering with persons in their enjoyment of a dwelling *because of* the race, color, religion, sex, handicap, familial status, or national origin of such persons" (emphasis added)).  A claim under § 3617 does not depend upon an underlying substantive violation of the FHA.  *Revock*, 853 F.3d at 112.

Jones has not stated a claim under § 3617 because she does not plead that PHA interfered with the exercise of her rights "because of" her disability.  The Amended Complaint states that PHA denied Jones's RFTA because "the unit lacked a rental license" and "PHA enforces a policy prohibiting voucher use in a relative-owned unit where the owner resides."  (Am. Compl. at 4.)  Neither of these reasons constitute interference with her rights "because of" her disability, so she has not stated a claim.

14

### C.    Disability Discrimination Under the ADA and RA

Jones asserts that PHA's denial of her RFTA also constituted a failure to provide her with a reasonable accommodation for her disability in violation of the ADA and RA. "Both [Title II of] the ADA and the RA require public entities . . . to provide, in all of their programs, services, and activities, a reasonable accommodation to individuals with disabilities." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 287 (3d Cir. 2019). "[W]hen a plaintiff sues under both the RA and the ADA, [courts] often address both claims in the same breath, construing the provisions of both statutes in light of their close similarity of language and purpose," since "the scope of protection afforded under both statutes, *i.e.*, the general prohibition against discrimination, is materially the same." *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 117 (3d Cir. 2018) (cleaned up). Although the substantive standards for determining liability under the Rehabilitation Act and the ADA are the same, *see Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014), a party who seeks to proceed under § 504 "must show that the allegedly discriminating entity receives federal funding," *McDonald-Witherspoon v. City of Philadelphia*, 481 F. Supp. 3d 424, 439 (E.D. Pa. 2020) (citing *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 235 n.10 (3d Cir. 2013)); *see also* 29 U.S.C. § 794(a).

To state a plausible claim under either the ADA or the RA, a plaintiff "must allege that [s]he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of [her] disability." *Furgess*, 933 F.3d at 288-89. The ADA and RA protect against intentional discrimination based on a disability, and intentional discrimination "includes failing to make reasonable accommodations for a plaintiff's disabilities." *Taylor*, 184 F.3d at 306; *see also Tennessee v. Lane*, 541 U.S. 509, 511 (2004) (noting that failure to accommodate a disability

15

"will often have the same practical effect as outright exclusion" from a public entity' s programs and services).

To allege plausibly that she is a "qualified individual with a disability," a plaintiff must provide facts to show that she has a "disability" which is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual . . . ."  42 U.S.C. § 12102(1)(A).  "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  *Id.* at § 12101(2)(A).  With the passage of the Americans with Disabilities Act Amendments Act ("ADAAA") in 2008, "Congress mandated that the definition of disability shall be construed in favor of broad coverage of individuals to the maximum extent permitted."  *Morgan v. Allison Crane & Rigging LLC*, 114 F.4th 214, 221 (3d Cir. 2024) (cleaned up).  Nonetheless, "to sufficiently allege that an impairment interferes with a major life activity, a plaintiff must elaborate on whether the alleged impairment interfered with [her] alleged major life activity during the period of alleged discrimination by Defendants," and "the plaintiff's allegations must contain sufficient factual support for his or her purported limitations, such as describing in some detail the frequency, duration, or severity of his or her limitations."  *Earl v. Good Samaritan Hosp. of Suffern NY*, 625 F. Supp. 3d 292, 304 (S.D.N.Y. 2022) (cleaned up), *aff'd*, No. 22-2505, 2023 WL 8708417 (2d Cir. Dec. 18, 2023).

As described above in relation to her FHA claims, Jones has failed to allege sufficient factual content to support any ADA or RA claims.  She does not explain her impairments or how they limit any major life activity.  Moreover, it is clear from Jones's pleading that PHA's denial of her RFTA was not "by reason" of her disability but instead was due to the lack of a rental

16

license and "[s]eparately and independently" because of the prohibition on her requested accommodation in the HUD regulations.  (Am. Compl. at 4.)  Accordingly, Jones has not stated a claim to relief under the ADA and RA on a theory of intentional discrimination or failure to accommodate.

### D.    Fourteenth Amendment Claim

Jones asserts a constitutional claim pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court, asserting that both PHA and the City deprived her of due process because she "has a protected property interest in the Housing Choice Voucher and the fair consideration of her request for reasonable accommodation," and the "Defendants deprived [her] of this interest through arbitrary, unlawful, and extra-textual policies and interpretations, without adequate procedural safeguards."  (Am. Compl. at 8.)  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[6]  *West v. Atkins*, 487 U.S. 42, 48 (1988).

The due process clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property without due process of law."  U.S. Const. amend. XIV.  "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) [s]he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available

---

[6]  PHA, although a Commonwealth entity, falls within the definition of "person" as a local government entity for purposes of § 1983 liability.  *See Solomon v. Phila. Hous. Auth.*, 143 F. App'x 447, 456 (3d Cir. 2005) (holding that (citing *Wright v. Philadelphia Hous. Auth.*, 1994 WL 597716, *3 (E.D. Pa. 1994)); *see also Lee v. Petrolichio*, 697 F. App'x 112, 113 n.5 (3d Cir. 2017) (*per curiam*) (a plaintiff must allege a governmental policy or custom to state a claim against PHA).

17

to [her] did not provide due process of law." *King v. City of Philadelphia*, 654 F. App'x 107, 111 (3d Cir. 2016) (*per curiam*) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006)). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (cleaned up); *see also Kadakia v. Rutgers*, 633 F. App'x 83, 88 (3d Cir. 2015) ("The essence of a procedural due process claim, of course, is notice and an opportunity to be heard."). Due process is not a technical conception with a fixed content unrelated to time, place, and circumstance. *See Gilbert v. Homar,* 520 U.S. 924, 930 (1997). Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972). Crucially, "[i]f there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what [s]he wants." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). "This requirement is to be distinguished from exhaustion requirements that exist in other contexts." *Id.*

The Court need not decide whether Jones adequately pleads a protected property interest in using her voucher or in the "fair consideration" of her request for an accommodation, because even if she does, she has not pleaded that she used the process available to her. PHA's Administrative Plan states: "HCV program applicants or clients may file a complaint in accordance with PHA's Informal Hearing Policy following a formal determination by PHA's Section 504/ADA Coordinator denying a reasonable accommodation." Admin. Plan § 3.7; *see also id.*, § 19.2 (describing Informal Hearing process). Jones does not plead any facts to suggest that she engaged with the Informal Review process, or in any other way sought to appeal the denial of her RFTA according to the processes and procedures afforded by PHA. Accordingly, she has not stated a plausible claim for a violation of her due process rights.

### E.      Claims Against the City of Philadelphia

Jones also asserts that the City was involved in the alleged denials of her reasonable accommodation because PHA relied on guidance issued by L&I in rendering its decisions on her requests.  Jones includes the City in her claims asserted under the FHA, ADA, and RA on that basis.  (*See* Am. Compl. at 5-8.)  However, because those claims fail for the reasons discussed above, Jones has not stated a claim for relief against the City on any of those theories.

Jones's Amended Complaint also includes a standalone count for "Ultra Vires and Unlawful Agency Action" against the City, based on purported errors in L&I's interpretation of the Philadelphia Code sections regarding rental licenses.  (*See id.* at 8-9.)  Pursuant to § 1983, a plaintiff may state a claim for municipal liability by alleging that the municipality's policies or customs caused a violation of the plaintiff's federal constitutional rights.  *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries," which can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged.  *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  "It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim."  *See Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 238 n.15 (3d Cir. 2013).

"Section 1983 grants individuals access to a federal forum for claims of unconstitutional treatment at the hands of state officials. . . . [B]y its terms, § 1983 provides a remedy for violations of federal, not state or local, law."  *McMullen v. Maple Shade Township*, 643 F.3d 96, 99 (3d Cir. 2011) (internal quotation marks and citations omitted).  To the extent that Jones's

claim against the City is based on her allegation of an error in interpreting the Philadelphia Code such that it was a violation of state or local law, that is not a valid basis for a claim under § 1983.[7] As discussed above, Jones has not stated a claim for a violation of the FHA, ADA, or RA, and she has not stated a claim for a violation of her federal constitutional right to due process. Jones does not allege that the City's policies or customs violated any other federal law or constitutional provision. Accordingly, she has not stated a claim to relief against the City.

## V.   CONCLUSION

For the foregoing reasons, the Court will grant the Defendants' Motions to Dismiss. Because Jones has had the opportunity to file an Amended Complaint, after receiving the Defendants' arguments for dismissal of her original Complaint, and did not cure the defects identified above, the Court concludes that further amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002). An order follows.

**BY THE COURT:**

**MARY KAY COSTELLO, J.**

---

[7] The Court notes that an "*ultra vires*" claim under federal question jurisdiction is generally confined to challenging the acts of a *federal* agency or actor. *See, e.g.*, *Fed. Express Corp. v. U.S. Dep't of Commerce*, 39 F.4th 756, 763 (D.C. Cir. 2022) (citations omitted)). Because the Court will dismiss all of Jones's claims arising under federal law as outlined in this Memorandum, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which requires "complete diversity between all plaintiffs and all defendants," thus "no plaintiff may be a citizen of the same state as any defendant." *Lincoln Ben. Life Co.*, 800 F.3d at 104 (cleaned up). Because Jones pleads that she is a citizen of Pennsylvania and names PHA and the City as Defendants, there is not complete diversity among the parties. The Court therefore lacks jurisdiction over any claims under Pennsylvania law and expresses no opinion on the availability of any such cause of action or remedy.

20